INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS (AFL-CIO), an unincorporated association, Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORPORATION, a Pennsylvania corporation, Defendant.

Civ. A. No. 16362.

United States District Court
W. D. Pennsylvania.

Nov. 20, 1958.

J. Alfred Wilner, Wilner, Wilner & Kuhn, Pittsburgh, Pa., Benjamin C. Sigal, Washington, D. C., for plaintiff.

John Wayman, Leonard Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

In this action, tried to the court without a jury, the plaintiff seeks to compel the defendant to submit two grievances (designated as National Appeal Grievance .Nos. 1584 and 1628) to arbitration under the terms of a collective bargaining agreement.

From the Stipulation of Facts filed by the parties and a copy of the collective bargaining agreement stipulated by the parties to be a true and correct copy of the contract which was in effect at all times material to this action, the court makes the following

### Findings of Fact

1. Plaintiff is an unincorporated labor organization having local unions throughout the United States and Canada and whose duly authorized agents are engaged in representing, in the Western District of Pennsylvania and elsewhere, members who have been, and are, employees of defendant.

2. Defendant is a Pennsylvania corporation having its principal office in Pittsburgh, Pennsylvania, and having plants and factories in many states of the United States, including Pennsylvania and Massachusetts.

3. Defendant annually purchases large quantities of raw materials and ships large quantities of finished products, in interstate and foreign commerce.

4. On or about March 20, 1956, plaintiff and defendant executed a written modification of a previously existing written collective bargaining agreement (hereinafter referred to as the "National Agreement"), which, as modified, will expire on October 15, 1960. The National Agreement was executed by plaintiff as collective bargaining representative for, and agent of, certain of defendant's employees at its various plants, including plants located at East Pittsburgh, Pennsylvania, and East Springfield, Massachusetts. This agreement governs the hours of work, rates of pay and other

conditions of employment for those of defendant's employees covered by its terms.

5. The National Agreement contains a grievance procedure for the settlement of disputes; it provides for arbitration of certain types of grievances which remain unsettled after the grievance procedure has been exhausted, and contains certain express limitations on the authority of the arbitrator. It further provides that where the parties disagree as to the arbitrability of any grievance, this issue must be determined by a Court before the matter can proceed to arbitration.

6. On or about September 10, 1956, a grievance was filed at defendant's East Springfield, Massachusetts, plant by an employee named J. Dulak. This grievance, National Appeal Grievance No. 1584, arose out of the plaintiff's objection to the defendant's assignment of a different time value [1] to a manufactured part, known as Style Y-53921, than had previously been recorded for a part known as Style Y-22070.

7. In the grievance meetings held to discuss National Appeal Grievance No. 1584, plaintiff contended that the recorded time value previously established for Style Y-22070 was intended to apply to parts of varying size including the size of Style Y-53921, and that defendant should have applied the existing recorded time value for Style Y-22070 to the manufacture of Style Y-53921 instead of establishing a new time value for this operation, even though the two parts were of different width. Defendant, on the other hand, contended that the recorded time value for Style Y-22070 applied only to that part, that a number of other time values established by time studies existed for other parts of different size manufactured on the same equipment, and that Style Y-53921 was a new operation for which it had a right to establish a new time value.

8. National Appeal Grievance No. 1584 was properly processed through the necessary steps set forth in the National Agreement to bring the grievance to the arbitration procedure.

9. Plaintiff then requested that National Appeal Grievance No. 1584 be submitted to arbitration, but the defendant declined to process the grievance through the arbitration procedure on the ground that it was not arbitrable.

10. On or about September 17, 1956, a grievance was filed at defendant's East Pittsburgh plant by Mario Rua, Section Steward. This grievance, National Appeal Grievance No. 1628, arose out of the plaintiff's objection to the defendant's method of reducing the time value for a certain manufacturing operation after a portion of that operation had been discontinued.

11. In the hearings held to discuss this grievance, plaintiff claimed that defendant improperly reduced the time value for the total operation by removing too much for the discontinued portion of the operation and claimed that a time study should have been taken to determine how much time should be removed from the value. Plaintiff claimed that the time value for the remaining operation was inadequate. Defendant contended that it had properly reduced the time value for the total operation by eliminating the time allowance for the discontinued portion of the operation, but offered to take a time study to determine whether the adjusted time value for the remaining operation was adequate. This offer was refused by plaintiff. Plaintiff contended that no specific time allowance had been established for the eliminated portion of the total operation and requested a time study for that one element.

12. National Appeal Grievance No. 1628 was properly processed through the necessary steps set forth in the National

1. The term "time value" as used by the parties is the amount of time, expressed in decimal hours, in which an employee can produce a unit free of defects. The primary purpose of the time value is to serve as a factor to determine the wages payable to employees working on the incentive system.

Agreement to bring the grievance to the arbitration procedure.

13. Plaintiff then requested that National Appeal Grievance No. 1628 be submitted to arbitration, but the defendant declined to process the grievance through the arbitration procedure on the ground that it was not arbitrable.

14. The National Agreement provides in its pertinent parts as follows:

"Section VIII—Wages

\* \* \* \* \* \*

"8. Times Values and General Wage Procedure for Incentive Operations

\* \* \* \* \* \*

"E. Recorded time values (as differentiated from temporary time values) will be changed only for the following reasons:

\* \* \* \* \* \*

"(2) (a) When there is a change in the method of manufacture, tools, material, design, production conditions or servicing conditions that affects the time value, only that portion of the value affected by the change will be adjusted. Sufficient additional elements to those affected by the change may be time studied to determine the effect of the change on the existing time value.

"(b) When a change is to be made in an operation, the time value for which is not broken down into elements, a time study may be taken before the change is made in order to establish the elements of the existing time value; but the time value will not be changed as a result of this study. When the change in the operation is made the provisions of sub-section (2) (a) of this paragraph will apply.

\* \* \* \* \* \*

"Section XIV-A—Arbitration

"A. Except as otherwise provided in this Agreement, any grievance involving action taken or failure to act subsequent to the effective date of Supplement VII to this Agreement which remains unsettled after the grievance procedure has been exhausted pursuant to Section XIV and which involves \* \* \*

"(1) the interpretation, application or claimed violation of a provision of this Agreement or of a local supplement in effect in the bargaining unit in which the grievance arose \* \* \*

"(2) \* \* \* shall be submitted to arbitration upon the written request of either the Union or the Company. Such request shall be made within thirty (30) days after the Company receives notice that its final reply at the national appeal level is unsatisfactory. If no request for arbitration is made by either the Company or the Union during such thirty (30) day period, both parties shall be deemed to have waived their right to make such request. For the purpose of proceedings within the scope of (2) above, the standard to be applied by an arbitrator to cases involving disciplinary penalties, releases or discharges is that they shall be imposed only for just cause.

\* \* \* \* \* \*

"C. \* \* \* \*

"(5) The American Arbitration Association shall have no authority to process a request for arbitration or appoint an arbitrator if either party shall advise the Association that the grievance desired to be arbitrated does not, in its opinion, raise an arbitrable issue. In such event, the Association shall have authority to process the request for arbitration and appoint an arbitrator in accordance with this Agreement and the above-mentioned Rules only after a final judgment of a Court has determined that the grievance upon which the arbitration has been requested raises an arbitrable issue or issues \* \* \*.

"D. Notwithstanding any other provisions of this Agreement, no arbitrator shall, without specific written agreement of the Company and

the Union with respect to the arbitration proceeding before him, be authorized to:

\* \* \* \* \* \*

"(2) Establish or modify any wage or salary rate, job classification or classification of any employe except as provided in Section VIII, Paragraphs 9.D., and 9.E., or any time value under the incentive system;"

## Discussion

■ Jurisdiction of this controversy arises under § 301(a) of the Labor-Management Relations Act of 1947, 29 U.S. C.A. § 185(a), which Act vests in the District Courts, inter alia, the power to decree specific performance of arbitration clauses in collective bargaining agreements. Textile Workers Union of Amer. v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

■ With respect to these grievances, the defendant takes the position in effect that inasmuch as a decision in favor of the plaintiff by an arbitrator would of necessity involve the establishment or modification by him of a time value under the incentive system, and since the National Agreement specifically prohibits an arbitrator from establishing or modifying a time value with respect to a proceeding before him, it would be futile and improper to submit these grievances to arbitration.

The plaintiff contends, on the other hand, that the grievances involve the interpretation, application, and claimed violation of the National Agreement; therefore, they are arbitrable under § XIV–A–A(1) of the Agreement and are not rendered any the less so by § XIV–A–D(2) which by its plain wording merely limits the *power* of an arbitrator with respect to the arbitration *proceeding before him.*

Our analysis of these disputes leads us to the conclusion that they involve the interpretation, application and claimed violation of provisions of the National Agreement and that, for the reasons set forth below, their resolution by an arbitrator would not necessitate the establishment or modification by him of a time value under the incentive system.

National Appeal Grievance No. 1584.

■ It seems clear enough that the arbitrator's resolution of the dispute here involved would not necessitate the establishment or modification of a time value under the incentive system.

The plaintiff contends that the recorded time value previously established for Style Y–22070 was intended by the parties to apply to parts of varying size including the size of Style Y–53921, and that the defendant violated the National Agreement by establishing a different time value for Style Y–53921. The defendant contends that the recorded time value for Style Y–22070 was intended to apply only to that part, and therefore the defendant was free to establish a different time value for Style Y–53921.

We offer no opinion on the merits of either contention, but it is obvious that the basic decision here required of an arbitrator is simply whether or not there *had been in existence* a recorded time value intended by the parties to be applied to a part within the description of Style Y–53921. The arbitrator by finding, as plaintiff argues, that there was such a time value would not be establishing or modifying a time value, but simply *declaring that one existed.*

National Appeal Grievance No. 1628.

Here plaintiff contends that the defendant violated § VIII–8–E(2) (a) of the National Agreement by following improper procedure in reducing the time value on what had been a three-step manufacturing operation after technical advances made one of the steps unnecessary.

The plaintiff contends in substance that under the above cited section of the National Agreement, when there is a change in the method of manufacture that affects the time value, only that portion of the value affected by the

change can be adjusted; in other words, before an adjustment could be made in the changed manufacturing operation here in question a time value had to be in existence or established for the step eliminated. The defendant contends that there had been a time value in existence for the step in question and that the disputed time value was established by simply eliminating the portion previously assigned to the now eliminated step. The plaintiff denies that there had ever been a time value assigned to the step in question and thereby claims that the defendant violated the National Agreement.

Since the grievance involves a claimed violation of the National Agreement, it is initially arbitrable under § XIV–A–A (1) thereof, and unless the limitations contained in § XIV–A–D(2) apply, should be submitted to arbitration.

Reducing the grievance to the ultimate question involved and which would have to be decided by an arbitrator, we find it to be simply a question of fact whether or not there had been in existence a time value assigned to the eliminated step of the manufacturing operation in question. If there had been, and defendant eliminated just that portion, then the arbitrator would simply find in defendant's favor; if there had not been, then the arbitrator would have to interpret the National Agreement to determine whether the defendant had violated it. In neither event would the arbitrator be doing what the National Agreement forbids him to do; viz., establishing or modifying a time value, rather he would be finding as a fact that one existed or that one had not existed.

Conclusions of Law

1. This court has jurisdiction of the parties and subject matter here involved.

2. National Appeal Grievance No. 1584 constitutes an arbitrable dispute under the National Agreement and as such should be submitted to arbitration under that Agreement.

3. National Appeal Grievance No. 1628 constitutes an arbitrable dispute under the National Agreement and as such should be submitted to arbitration under that Agreement.

An appropriate decree will be entered.